IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
OLD WILSON DIVISION

**No. 8:69-CV-01128-M**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.**

**HALIFAX COUNTY**
**BOARD OF EDUCATION, et al.**

**Defendants.**

---

**JOINT MOTION FOR UNITARY STATUS AND DISMISSAL WITH PREJUDICE**

Plaintiff, United States of America ("United States"), and Defendant, Halifax County Board of Education (the "District"),[1] Board of County Commissioners of Halifax, the Town of Scotland Neck, Mayor of the Town of Scotland Neck, Members of the Board of Commissioners of the Town of Scotland Neck,[2] the Haliwa-Saponi Indian Tribe Citizens,[3] collectively (the "Parties")[4] hereby submit this Motion for Unitary Status and Dismissal of this action with prejudice, and respectfully request that the Court enter the Order appended hereto. The State of North Carolina and North Carolina Department of Public Instruction do not join this motion. In support, the Parties state as follows:

---

[1] The Littleton-Lake Gaston School District no longer exists. Russell N. Manning was the school district's superintendent.
[2] The Scotland Neck City Board of Education no longer exists.
[3] In 1969, the Haliwa-Saponi Indian Tribe Citizen Intervenors included Maryetta, Montenia, Timmie, Charlotte, and Jimmy Richardson on behalf of the Haliwa-Saponi Indian Tribe and residents of Halifax—these individuals were or are Tribal Citizens.
[4] Plaintiff-Intervenors Pattie Black Cotton is retired from Halifax County Schools, Edward M. Francis is deceased, and there is no formal group known as the Public School Teachers of Halifax County. The Halifax County Board of Education has joined this motion.

## PROCEDURAL HISTORY

1. On July 27, 1968, the Civil Rights Division, United States Department of Justice, sent notice to the Halifax County Board of Education that the District's freedom-of-choice plan was unconstitutional because it did not dismantle its segregated school system.
2. On March 3, 1969, the General Assembly of North Carolina enacted Chapter 31 of the 1969 Session Laws of North Carolina, which established the Scotland Neck City School Administrative Unit as a separate unit from the Halifax County School Unit.
3. The United States filed this case on June 16, 1969, asking this Court to declare provisions of Chapter 31 unconstitutional, to enjoin Defendants from creating the Scotland Neck City School Administrative Unit, to enjoin the Halifax County Board of Education from failing to afford equal educational opportunities to all students without regard to race, and to require the District to take prompt steps toward assigning students to schools without regard to race on the basis of unitary geographic attendance zones.
4. On August 25, 1969, the District Court enjoined the operation of the Scotland Neck City School Unit, pending a final determination on the merits, and on November 24, 1969, the Court ordered the District to present a new plan for desegregation by December 15, 1969. That order was amended on December 5, 1969, requiring the District to submit additional information.
5. The Halifax County Board of Education adopted a plan on December 1, 1969, providing for the assignment of students to schools within the Administrative Unit without regard to race based on unitary geographic attendance zones. There was no date for implementation of that plan. A copy of the resolution adopting that plan was received by the District Court on December 15, 1969.

6. On April 6, 1970, the Halifax County Board of Education amended its plan. The amendments did not alter the fact that students in the District would be assigned to schools without regard to race based on unitary geographic attendance zones.
7. On May 19, 1970, the District Court ordered that the plan of the Halifax County Board of Education be implemented no later than June 1, 1970.
8. In a separate opinion and order, the District Court permanently enjoined the creation of the Scotland Neck City Administrative School Unit, the effect of which was to include that area of the county in the Halifax plan which was to be implemented by June 1, 1970. *United States v. Halifax County Board of Education*, 314 F. Supp. 65, 78 (E.D.N.C. 1970).
9. On June 3, 1970, the District Court allowed the April 6, 1970 amendments to the December 1, 1969 plan. The District implemented the plan as amended for the 1970–1971 school year as ordered by the Court.
10. On March 23, 1971, the Fourth Circuit reversed the decision of the District Court*, see United States v. Scotland Neck City Board of Education*, 442 F.2d 575, 576 (4th Cir. 1971), but approximately one year later, the United States Supreme Court reversed the Fourth Circuit and upheld the District Court's decision. *United States v. Scotland Neck City Board of Education*, 407 U.S. 484, 489 (1972).
11. The District Court's last docket entry, entered on November 10, 1972, acknowledged receipt of the Judgment of the United States Supreme Court and the record on appeal from the Fourth Circuit.
12. In the decades that followed, the Department of Justice regularly requested information to ensure that the District was complying with its desegregation obligations and all applicable

federal law. Based upon periodic review since 1972, the District has complied with the Judgment and therefore the Court's involvement has not been needed for over 50 years.

13. Due to consolidation and a decrease in school population in the county, the District now operates fewer schools than in 1972. There are eleven total schools: two high schools, one serving the east side of the county and the other serving the west; two middle schools, one on the north side of the county and the other on the south; six elementary schools, which are spaced throughout the District, and one Early College operating on the campus of Halifax Community College. Students are assigned to these schools without regard to race based on unitary geographic attendance zones. The Early College serves the entire district.

14. Based on a comprehensive review of the information provided by the District to the United States periodically over the last 50 years, the United States concludes that the District has become unitary with respect to each of the *Green* factors: (1) student assignment, including school assignment, student transfers, classroom assignment, gifted and talented, and discipline; (2) faculty and staff, including faculty assignment and faculty hiring; (3) transportation; (4) facilities; and (5) extracurricular activities. *See Green v. School Board of New Kent County*, 391 U.S. 430 (1968). *See also Freeman v. Pitts*, 503 U.S. 467 (1992) (explaining and applying the *Green* factors).

15. In 2020, the Civil Rights Division of the Department of Justice requested information from the District, and the District provided the requested information. The Division analyzed the data provided and determined that the District was unitary based on the factors set forth in *Green*. For example, the black student population at each of the District's schools fell within a +/- 15 percentage point range from the overall black student population of 83.4%. *See e.g., Belk v. Charlotte-Mecklenburg Bd. of Educ.,* 269 F.3d 305, 319 (4th Cir. 2001)

("[P]lus/minus fifteen percent variance is clearly within accepted standards, and provides a reasonable starting point in the unitary status determination."). Only one school was an outlier – Hollister Elementary School. Hollister had only a 43.9% black student population because there was a large Native American population there, which made up 50.9% of the student body. Located within the territory of the Haliwa-Saponi Indian Tribe, just 1.6 miles from the tribal government's headquarters, Hollister Elementary serves a majority of the Haliwa-Saponi Indian students. Because the rest of the schools were within the 15% range and the District's *Green* factors tracked the county's racial demographics, the United States determined that the *Green* factors were satisfied with respect to Student Assignment, Extra Curriculars, Facilities, and Transportation. The data provided on Faculty and Staff similarly demonstrated the District has satisfied its requirements under *Green*.

16. Since the Division's review in 2020, nothing material has changed regarding the District's unitary status. Additional data the Division requested on February 10, 2023, and received from the District through March 24, 2024, confirms the District's unitary status.

17. The 2025–2026 data supports a finding that the District is racially integrated and unitary.

18. For example, to demonstrate Halifax County's progress on desegregation, the following table shows the racial breakdown of students in Halifax County schools for the 1967–1968 school year (before the United States commenced desegregation enforcement) approximated to the nearest percentage:

| **School** [5] | **Grades** | **Black** | **White** |
|---|---|---|---|
| Aurelian Springs High School | 1-12 | 23% | 63% |
| Bakers Elementary School | 1-8 | 100% | 0 |
| Brawley High School | 1-12 | 100% | 0 |
| Dawson Elementary School | 1-8 | 100% | 0 |
| Eastman High School | 1-12 | 100% | 0 |
| Enfield Graded School | 1-12 | 31% | 69% |
| Everetts Elementary School | 1-8 | 100% | 0 |
| Hollister Elementary School | 1-8 | 92% | 0 |
| Inborden Elementary School | 1-8 | 100% | 0 |
| John Armstrong Chaldner | 1-12 | 100% | 0 |
| **District-wide Total:** | | **77%** | **22%** |

As the data shows, in 1967–1968, most of the schools in Halifax County deviated significantly from the countywide averages in terms of the racial composition of the student

[5] Aurelian Springs High School, Eastman High School and Hollister Elementary School all had some American Indian populations, however at that time the State and counties did not uniformly maintain American Indian data separate from other races and improperly categorized them within other racial data sets.

body. This included seven schools that were 100% Black, and two schools that were over 60% White.

19. The following table shows the racial breakdown of students in Halifax County schools in the 2025–2026 school year,[6] approximated to the nearest percentage:

| **School** | **Grades** | **Black** | **White** | **Native American** | **Other** |
|---|---|---|---|---|---|
| Aurelian Springs Elementary School | PK-5 | 76% | 12% | 0 | 12% |
| Everetts Elementary School | PK-5 | 77% | 6% | 1% | 16% |
| Hollister Elementary School | PK-5 | 50% | >1% | 39% | 10% |
| Inborden Elementary School | PK-5 | 88% | 3% | 1% | 8% |
| Pittman Elementary School | PK-5 | 92% | 1% | 1% | 6% |
| Scotland Neck Elem Leadership Academy | K-5 | 86% | 4% | 0 | 10% |
| Enfield Middle School | 6-8 | 88% | 2% | 1% | 9% |
| W R Davie Middle School | 6-8 | 77% | 4% | 11% | 8% |
| Halifax Co Early College High School | 9-10 | 78% | 4% | 9% | 9% |
| Northwest Halifax High School | 9-12 | 76% | 5% | 10% | 9% |
| Southeast Halifax High School | 9-12 | 90% | 1% | 0 | 9% |
| **District-wide Total:** | | **79%** | **4%** | **8%** | **9%** |

20. As of 2026, all the schools are close to the countywide racial composition, never deviating more than 15% from the countywide percentage for any racial group (except for Hollister Elementary discussed above).

[6] Current data gathered from https://www.niche.com/k12/d/halifax-county-schools-nc/, which sources its data primarily from U.S. Department of Education, the National Center for Education Statistics (NCES).

21. Based on this and other analyses conducted by the United States, the continuous efforts of the District, and the long period of monitoring, the United States concludes that the vestiges of the prior *de jure* segregation have been eliminated to the extent practicable.

**UNITARY STATUS**

22. "From the very first, federal supervision of local school systems was intended as a *temporary* measure to remedy past discrimination." *Bd. of Educ. of Oklahoma City Public Schools v. Dowell*, 498 U.S. 237, 247 (1991) (emphasis added). This is the case partly because "[n]o single tradition in public education is more deeply rooted than local control over the operation of schools," *Milliken v. Bradley*, 418 U.S. 717, 741 (1974), and also because it was never the purpose of the federal courts' desegregation jurisprudence to "condemn a school district, once governed by a board which intentionally discriminated, to judicial tutelage for the indefinite future," *Dowell*, 498 U.S. at 249.

23. When local school authorities demonstrate they have complied in good faith with a district court's desegregation decree and that vestiges of their prior illegal racial discrimination have been eliminated to the extent practicable, the school system has attained unitary status, and the court must return control over the school system to the local school authorities. *Lee v. Talladega County Board of Education*, 963 F.2d 1426, 1430 (11th Cir. 1992).

24. As a result of the decades of compliance monitoring, after 53 years, the Parties can now represent to the Court, that the District has eliminated all vestiges of segregation and achieved unitary status with the entire school district—fulfilling the promise of racially integrated schools inaugurated by *Brown v. Board of Education*, 347 U.S. 483 (1954).

## CONCLUSION

The Parties request this Court declare the District unitary, dissolve all remaining orders and injunctions against the District, and dismiss this case with prejudice.

Dated March 31, 2026.

By: /s/ *Adam Griffin*
Adam Griffin, Trial Attorney
Peter Feaman, Senior Counsel
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave. NW
Washington, DC 20530
336-202-0082
Adam.Griffin@usdoj.gov
State Bar No. 55075
Counsel for the United States of America

By: /s/ *Lawrence Armstrong*
H. Lawrence Armstrong, Jr.
Armstrong Law, PLLC
Attorney at Law
119 Whitfield St.
Enfield, NC 27823
252-445-5656
hla@hlalaw.net
State Bar No. 6485
Counsel for Halifax County Board of Education and Board of County Commissioners of Halifax

By: /s/ *J. Brian Prigden*
J. Brian Prigden
Cauley Prigden P.A.
2500 Nash Street N, Ste C
Wilson, NC 27896-1394
(252) 291-3848
Fax (252) 291-9555
bpridgen@cauleypridgen.com
State Bar No. 31739
Counsel for the Town of Scotland Neck, Mayor of the Town of Scotland Neck, and Members of the Board of Commissioners of the Town of Scotland Neck

By: /s/ *Joshua Richardson*
Joshua Richardson
Legal Counsel
Haliwa-Saponi Indian Tribe
P.O. Box 99
Hollister, NC, 27844
(919) 946-0133
jrichardson@haliwa-saponi.gov
State Bar No. 56812
Counsel Haliwa-Saponi Indian Tribe

**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NORTH CAROLINA**

**UNITED STATES OF AMERICA,**

**Plaintiff,**

**vs.** **CASE NO. 8:69-CV-01128**

**HALIFAX COUNTY BOARD OF EDUCATION, et al.,**

**Defendants.**

---

## CERTIFICATE OF SERVICE

I hereby certify that, on this 31st day of March 2026, the foregoing notice was filed electronically with the Clerk of the Court using the CM/ECF system, which gives notice of filing to all counsel of record.

I hereby certify that I have served the motion and proposed order to the following, who consented to accept service via email under Rule 5(b)(2)(E) and (F) of the Federal Rules of Civil Procedure:

- H. Lawrence Armstrong for Halifax County Board of Education and Board of County Commissioners of Halifax – hla@hlalaw.net
- J. Brian Prigden for the Town of Scotland Neck; Mayor of the Town of Scotland Neck; and Members of the Board of Commissioners of the Town of Scotland Neck – bpridgen@cauleypridgen.com
- Joshua Richardson for the Haliwa-Saponi Indian Tribe and Dr. Brucie Ogletree Richardson, Chief of the Haliwa-Saponi Indian Tribe – jrichardson@haliwa-saponi.gov
- Todd Russell for the North Carolina Department of Public Instruction – trussell@ncdoj.gov
- Melissa Lovell for the State of North Carolina – P.O. Box 629, Raleigh, NC 27602 (via mail, Fed R. Civ. P. R.5(b)(2)(C))

*/s/ Adam Griffin*
ADAM GRIFFIN